# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. SMITH-GOODMAN,<br>Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 18-CV-3675 |
| CITY OF PHILADELPHIA<br>DEPARTMENT OF HUMAN<br>SERVICES, *et al.*,<br>Defendants. | : | |

## MEMORANDUM

SÁNCHEZ, C.J.                                                                                     SEPTEMBER 19, 2018

Currently before the Court is *pro se* Plaintiff Lisa A. Smith-Goodman's Amended Complaint, which asserts claims pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Turning Points for Children, Stephanie English, Katlin Sullivan, and the Honorable Allan Tereshko based on allegations that Smith-Goodman's rights were violated in connection with dependency proceedings in state court that resulted in the removal of a minor child, Z.M., from her care. For the following reasons, the Court will dismiss Smith-Goodman's Amended Complaint with leave to amend.

## I.  FACTS AND PROCEDURAL HISTORY

Smith-Goodman filed her initial Complaint, along with a Motion to Proceed *In Forma Pauperis*, against the City of Philadelphia (also identified as "City of Philadelphia, Department of Human Services") and Turning Points for Children (also identified as "Community Umbrella Agency (9)"). Smith-Goodman alleged that she was "deprived of [her] right to due process as a person who stands in loco parentis to a child in dependency court" in connection with an August

1

7, 2018 hearing in the Philadelphia Court of Common Pleas Family Division.[1] (Compl. ECF No. 2 at 6.)[2] In a Memorandum and Order entered on the docket August 31, 2018, the Court granted Smith-Goodman leave to proceed *in forma pauperis* and dismissed the Complaint.

First, the Court explained that to the extent Smith-Goodman was attempting to assert claims on behalf of Z.M., she lacked standing to do so. Second, the Court informed Smith-Goodman that, pursuant to the *Rooker-Feldman* doctrine, the Court lacked jurisdiction to review or vacate any unfavorable judgments issued by the state court. Finally, the Court concluded that Smith-Goodman failed to state a claim because she had not alleged that the constitutional violations in question stemmed from a policy or custom of the City or Turning Points for Children/Community Umbrella Agency (9), as would be necessary to state a claim against either of those entities. Smith-Goodman was given leave to file an amended complaint, which she did.

In her Amended Complaint, Smith-Goodman indicates that she is raising claims for violation of her constitutional rights pursuant to 42 U.S.C. § 1983,[3] Federal Rule of Civil Procedure 60(d)(1) & (3), and various Pennsylvania statutes pertaining to truancy and child custody. Smith Goodman alleges that on December 6, 2017, she was contacted by Stephanie English, who appears to be a social worker for the City of Philadelphia, regarding a report filed with the Department of Human Services indicating that Z.M. "was truant, without proper

---

[1] It is not clear whether Smith-Goodman has a familial relationship with Z.M. or how Z.M. came to be in her custody.

[2] The Court adopts the pagination assigned to Smith-Goodman's pleadings by the CM-ECF system.

[3] Although Smith-Goodman cites 18 U.S.C. § 241 & § 242, those are criminal statutes that do not give rise to civil liability. *See Colon-Montanez v. Pennsylvania Healthcare Serv. Staffs*, 530 F. App'x 115, 118 (3d Cir. 2013) (per curiam) ("[T]hese criminal statutes [18 U.S.C. §§ 241 and 242] provide no private right of action for use by a litigant such as Colon–Montanez."). The Court will therefore construe Smith-Goodman's constitutional claims under 42 U.S.C. § 1983, which provides for a civil cause of action.

2

supervision, and that Smith-Goodman had mental health and alcohol abuse histories." (Am. Compl. ECF No. 6 at 7.) Smith-Goodman agreed to a home visit, which took place the same day. During that visit, Smith-Goodman provided English with documentation to support Z.M.'s absence from school as well as correspondence "confirming that assignments were being completed and returned to the teacher during [Z.M.'s] absences." (*Id.*) Smith-Goodman also signed an authorization for the release of her mental health and substance abuse records. She alleges that Z.M. was "deemed to be safe" in her home. (*Id.*)

On January 16, 2018, English filed a petition in the Philadelphia Family Court to initiate dependency proceedings to remove Z.M. from Smith-Goodman's care. Smith-Goodman alleges that Pennsylvania law "requires schools to convene school attendance improvement conferences before referring truancy matters to [the state courts or relevant agencies]" and that agencies "must not accept referrals from schools without verification of school attendance improvement plans." (*Id.* at 8.) Smith-Goodman appears to be claiming that the filing of the dependency petition violated her rights because it did not comply with that state law, as she was not notified of any school attendance improvement conferences or issues with truancy. Smith-Goodman also alleges that English violated her due process and equal protection rights, as well as her rights under the Fourth Amendment, by "devis[ing] an unconscionable scheme to circumvent each of the state and local laws/polices pertaining to truancy." (*Id.* at 8-9.)

Smith-Goodman alleges that Judge Tereshko received the petition to adjudicate dependency on February 6, 2018, and "acknowledged that the Petition contained no 'Dependency Issues,'" yet continued to adjudicate the petition, thereby violating her rights. (*Id.* at 10.) On August 7th, following a hearing presided over by Judge Tereshko, "Smith-Goodman's legal custody [over the minor child] was suspended, and visitation to be decided at a later date."

3

(*Id.* at 6.) Judge Tereshko's order also directed that Z.M. would remain under protective supervision and transferred legal and physical custody of Z.M. to Z.M.'s mother.

Smith-Goodman alleges that Katlin Sullivan, apparently a case manager for Turning Points for Children, conspired with English and "engaged in fraud upon the court . . . by providing fraudulent testimony relating to truancy issues" in connection with the August 7th and possibly other hearings in state court. (*Id.* at 9.) Smith-Goodman also alleges that Sullivan violated her rights by requiring her and her family "to submit to criminal background checks that are required by foster families and repeatedly visiting the school with regard to truancy without a truancy referral" even though "Smith-Goodman is not a foster parent and . . . did not have a truancy referral." (*Id.* at 10.)

Smith-Goodman alleges that she has experienced stress and anxiety resulting from the loss of custody of Z.M. as well as insomnia, mental distress, and chest pain. As relief, Smith-Goodman asks the Court to direct the Defendants to "cease any actions" that violate her constitutional rights. (*Id.* at 4.) She also seeks monetary damages.

## II. STANDARD OF REVIEW

As Smith-Goodman is proceeding *in forma pauperis*, her Amended Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.*

4

Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). As Smith-Goodman is proceeding *pro se*, the Court construes her allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. *Rooker-Feldman* Doctrine

As previously explained to Smith-Goodman, this Court lacks jurisdiction to review and/or vacate the judgment entered by the state court. Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). Based on that principle, the *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 166 (quotations omitted). By virtue of her references to Federal Rule of Civil Procedure 60(d)(1) &(3) and her allegation that Judge Tereshko's judgment was procured by fraud, Smith-Goodman seems to be asking this Court to invalidate that judgment on grounds that it was fraudulent. To the extent she is trying to do so, this Court lacks jurisdiction to review her claims.

### B. Constitutional Claims Under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Smith-Goodman's § 1983 claims fail.

5

### 1. Claims Against the City and Turning Points for Children

As previously explained to Smith-Goodman, to state a § 1983 claim against a municipality such as the City of Philadelphia or an entity that contracts with a municipality, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Here, Smith-Goodman has not identified a policy or custom of either the City or Turning Points for Children that led to the alleged violation of her constitutional rights. To the contrary, it appears that Smith-Goodman seeks to hold these entities liable because they employed the individuals who allegedly violated her rights. Accordingly, she has not stated a basis for a § 1983 claim against those Defendants. *See B.S. v. Somerset Cty.*, 704 F.3d 250, 274 (3d Cir. 2013) ("With respect to municipalities such as the County, [the] inquiry turns on whether the due process violation was a result of the County's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'").

### 2. Claims Against Judge Tereshko

Smith-Goodman may not proceed on her § 1983 claims against Judge Tereshko. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). Here, Smith-Goodman is suing Judge Tereshko based

on acts he took while presiding over dependency proceedings. Accordingly, Judge Tereshko is entitled to absolute judicial immunity from those claims.

### 3. Claims Against English and Sullivan

#### a. Claims Based on Sullivan's Testimony in Court

Most of Smith-Goodman's claims against Sullivan are predicated on allegations that Sullivan provided false testimony in the proceedings before Judge Tereshko. However, witnesses are entitled to absolute immunity from liability based on testimony given in court. *See Briscoe v. LaHue*, 460 U.S. 325, 341-46 (1983); *see also Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) ("Witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony"). Accordingly, the Court must dismiss Smith-Goodman's claims against Sullivan to the extent they are based on Sullivan's testimony in court.

#### b. Claims Based on English's Initiation and Prosecution of Dependency Proceedings

Most of Smith-Goodman's claims against English are based on English's initiation and prosecution of dependency proceedings in state court. The Court must dismiss those claims because "child welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (citing *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486 (3d Cir. 1997)). That immunity is "broad enough to include the formulation and presentation of recommendations to the court in the course of the proceedings." *Id.*; *see also B.S.*, 704 F.3d at 266 (concluding that immunity applied where "Eller, on behalf of the County and under Barth's supervision, recommended that the court issue an order depriving Mother of custody of Daughter"). In other words, Smith-Goodman may not pursue claims against English based on her initiation and prosecution of the dependency petition in Family Court.

### c. Conspiracy Claims

Although Smith-Goodman appears to be claiming that Sullivan and English conspired against her, she has not stated a plausible conspiracy claim. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at 178. "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'" *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)). Rather, a plaintiff must allege in specific "terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy." *Great W. Mining & Mineral Co.*, 615 F.3d at 179.

Here, Smith-Goodman alleges that Sullivan and English conspired to violate her constitutional rights but she does not provide any facts to support that conclusion. Nothing in the Amended Complaint plausibly suggests an agreement between those two Defendants to violate Smith-Goodman's rights. Accordingly, the Court will dismiss any conspiracy claims.

### d. Remaining Claims

Smith-Goodman's remaining claims are based on: (1) her allegation that English investigated her following receipt of a truancy report without following state law; and (2) her allegation that Sullivan required her and her family "to submit to criminal background checks that are required by foster families and repeatedly visit[ed] the school with regard to truancy

8

without a truancy referral" even though "Smith –Goodman is not a foster parent and . . . did not have a truancy referral."[4] (Am. Compl. at 10.) "By its terms, § 1983 provides a remedy for violations of federal, not state or local, law." *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011). Accordingly, even if English and Sullivan's actions violated state law, that violation would not give rise to a claim under § 1983 unless Smith-Goodman's federal rights were also violated. In other words, a violation of Pennsylvania's truancy laws is insufficient, on its own, to give rise to a federal cause of action.

Although Smith-Goodman appears to be basing her claims solely on alleged violations of state law, the Court also concludes that her allegations, even broadly construed, do not give rise to a constitutional claim. Smith-Goodman has not alleged an unreasonable search or seizure under the Fourth Amendment. The only arguable Fourth Amendment activity is English's visit to Smith-Goodman's home, but the Amended Complaint reflects that Smith-Goodman consented to that visit. In any event, it appears that the primary basis for Smith-Goodman's Fourth Amendment claim is the seizure of Z.M. from her custody, which does not give rise to a claim against the Defendants for the reasons discussed above.[5] Her allegations also do not give rise to a plausible equal protection or due process violation, as she has not alleged that she was treated differently from others similarly situated and it is not clear why the process afforded to her by the state courts was insufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)

---

[4] Again, as noted above, it is not clear whether Smith-Goodman has a familial relationship with Z.M. and the circumstances under which Z.M. came to be in her custody.

[5] It also appears that Smith-Goodman would not have the ability to raise that claim. *See Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf."); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

9

(to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *Miller v. City of Phila.*, 174 F.3d 368, 373-75 (3d Cir. 1999) (explaining that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner" (citations omitted)). She also has not alleged anything that would support conscience-shocking conduct sufficient to make out a substantive due process claim. *See Dennis v. Dejong*, 557 F. App'x 112, 116 (3d Cir. 2014) ("For liability to attach in a situation where a social worker acts to separate parent and child, 'the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed shocks the conscience.'" (quoting *Miller*, 174 F.3d at 375-76) (internal quotations omitted)).) In sum, the Amended Complaint does not support any plausible constitutional claim upon which Smith-Goodman may proceed.

## C. Claims Under Pennsylvania Law

To the extent Smith-Goodman is raising any claims under Pennsylvania law, the Court lacks jurisdiction over those claims.[6] The only independent basis for the Court's jurisdiction over state law claims is pursuant to 28 U.S.C. § 1332(a), which grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction requires "complete diversity," which in turn requires that "no plaintiff be a citizen of

---

[6] The Court declines to exercise supplemental jurisdiction over Smith-Goodman's state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

10

the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). Here, the Amended Complaint suggests that all of the parties are citizens of Pennsylvania, so there is no basis for this Court to exercise diversity jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Smith-Goodman's Amended Complaint. In light of Smith-Goodman's *pro se* status, the Court will provide her one more opportunity to amend. However, any second amended complaint should not raise claims challenging the state court's judgment or raise claims that are barred by immunity as discussed above. An appropriate Order follows.

BY THE COURT:

_____
JUAN R. SANCHEZ, C.J.