IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. SMITH-GOODMAN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-3675 |
| | : | |
| CITY OF PHILADELPHIA DEPARTMENT OF HUMAN SERVICES, et al. | : : : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                                                            **August 13, 2019**

      Pro se Plaintiff Lisa A. Smith-Goodman brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants City of Philadelphia, the City's social worker, Stephanie English, in her official capacity (together, the City Defendants), Turning Points for Children, and Turning Points' employee, Kaitlin Sullivan, in her official capacity (together, the Turning Points Defendants), alleging Defendants violated her Fourteenth and Fourth Amendment rights by maintaining a policy of reunifying children with their biological parents without regard to the rights of those who serve as in loco parentis guardians and removing a child from her custody for whom she served in loco parentis. The City Defendants and Turning Points Defendants have both moved to dismiss Smith-Goodman's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court finds Smith-Goodman (1) did not establish that her substantive due process rights were violated; (2) received adequate procedural due process; (3) failed to plead a "class-of-one" equal protection claim; and (4) cannot assert a Fourth Amendment child seizure claim, Defendants' motions to dismiss will be granted.[1]

---

[1] On May 10, 2019, Smith-Goodman filed a motion seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Because the Court will grant Defendants' motions to dismiss, Smith-Goodman's preliminary injunction motion will be dismissed as moot.

**FACTS**[2]

In 2008, minor child Z.K.M. was left in Smith-Goodman's custody by Z.K.M.'s biological mother by an "agreement/testimony" made in the Pennsylvania Court of Common Pleas of Philadelphia County, Family Division (Family Court), for Z.K.M.'s first year of life. Second Am. Compl. ¶ 5. Thereafter, in March 2010, Smith-Goodman filed for physical and legal custody of Z.K.M. in Family Court, after learning Z.K.M.'s biological mother was being investigated for drug use during another pregnancy that resulted in the birth of a child with drugs in the child's system. *See id.* On March 16, 2011, the Honorable Diane Thompson, initially awarded Z.K.M.'s biological mother sole physical and legal custody of Z.K.M. Subsequently, on June 21, 2011, Z.K.M.'s biological mother and Smith-Goodman entered into another agreement in which they agreed to shared physical and legal custody of Z.K.M.

At a later date, the custody proceeding was transferred to the Honorable Peter F. Rogers, who, on February 2, 2015, suspended Smith-Goodman's custodial rights until further court order.

---

[2] The facts set forth in this Memorandum are construed in the light most favorable to Smith-Goodman, *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and drawn from the allegations in the Second Amended Complaint and several documents Smith-Goodman provided to the Court at the May 16, 2019, oral argument on her preliminary injunction motion. The documents Smith-Goodman provided to the Court include transcripts, orders, and docket entries from the underlying dependency proceeding as well as several emails and letters authored by Smith-Goodman. While these documents were not attached to her Second Amended Complaint, the Court may consider them because they are integral to Smith-Goodman's claims. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[D]ocument[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)).

Additionally, because Smith-Goodman provided these documents to the Court at oral argument and did not enter them on the docket, the Court will docket these documents. The Court will further place these documents under seal because they contain the identifying information of a minor child. *See N'Jai v. Pittsburgh Bd. of Public Educ.*, No. 10-1323, 2011 WL 1402855, at *4 (W.D. Pa. April 13, 2011) (sealing documents showing the names of minor children).

After lengthy litigation—involving several appeals, motions for recusal, and petitions for contempt of custody filed by Smith-Goodman—the custody proceeding were resolved on November 9, 2017, by third agreement between Z.K.M.'s biological mother and Smith-Goodman to share legal and physical custody of Z.K.M.

After Z.K.M.'s biological mother and Smith-Goodman entered into the custody agreement, the Philadelphia Department of Human Services (DHS) initiated a dependency proceeding in Family Court.[3] On February 6, 2018, the Honorable Allan L. Tereshko held a hearing on the dependency petition, which Smith-Goodman and her court-appointed counsel, Lisa Visco, Esq., attended. At the hearing, English, in her capacity as a social worker for DHS, testified as to the dependency issues in the case noting two reports were made to DHS—one report against Smith-Goodman for Z.K.M. having truancy issues and for Smith-Goodman's failure to take Z.K.M. to therapy, and one report against Z.K.M.'s mother for using marijuana in her home which hurt Z.K.M.'s eyes. English expressed concern for Z.K.M. because she was "very vocal" about being "confused about her caregiver[]" situation and being "afraid to upset one caregiver over the other." Tr. 13, Feb. 6, 2018. At this hearing, Attorney Visco challenged English on her testimony regarding the report against Smith-Goodman for Z.K.M. having truancy issues. *Id.* at 21. At the conclusion of the hearing, Judge Tereshko adjudicated Z.K.M. dependent in Smith-Goodman's home, but transferred legal and physical custody of Z.K.M. to Smith-Goodman for the time being. Judge Tereshko further authorized DHS to "evaluate under the best interest test where [Z.K.M.] should be placed," *Id.* at 26, and defined Z.K.M.'s placement goal as to "remain with [her biological mother] or [Smith-Goodman]." Order of Adjudication and Disposition 1, Feb. 21, 2018.

---

[3] The limited record before the Court does not specify the exact date and manner in which the dependency proceeding was initiated.

On May 8, 2018, Judge Tereshko held another hearing.[4] At this hearing, Sullivan, in her capacity as an employee for the community umbrella agency Turning Points for Children, testified that the goal of the dependency proceedings was to reunify Z.K.M. with her mother, *see* Tr. 9, May 8, 2018, and that she felt Smith-Goodman was an impediment to reunification, *see id.* Sullivan further discussed her visit to Smith-Goodman's home and observations of Smith-Goodman as Z.K.M.'s guardian, on which Attorney Visco cross-examined her. *See id.* at 19-20. After hearing testimony, Judge Tereshko indicated a willingness to reunite Z.K.M. with her biological mother. However, because Z.K.M.'s biological mother tested positive for marijuana use prior to the hearing, he refused to do so. *Id.* at 27 ("[I]f I did not have the [biological mother's] drug issues to deal with . . . I would re-unite the family today."). Judge Tereshko deferred deciding Z.K.M.'s placement until a later date.

Judge Tereshko held another hearing on Z.K.M.'s placement on August 7, 2018.[5] At this hearing, which Smith-Goodman and Attorney Visco also attended, *see* Permanency Review Order (Non-Placement) 1, Aug. 7, 2018, Judge Tereshko returned physical and legal custody of Z.K.M. to her biological mother, *see id.* Judge Tereshko further suspended Smith-Goodman's guardianship and visitation rights. *See id.* at 2.

On August 28, 2018, Smith-Goodman filed the instant action, alleging she was "deprived of [her] right to due process as a person who stands in loco parentis to a child in dependency court" as well as purporting to bring certain claims on Z.K.M.'s behalf. Compl. 6. The Court sua sponte

---

[4] Attorney Visco was present at the beginning of the May 8, 2018, hearing. However, Smith-Goodman arrived late. *See* Tr. 10-11, May 8, 2018.

[5] Smith-Goodman did not provide a transcript for the August 7, 2018, hearing. The only information pertaining to this hearing stems from the order Judge Tereshko entered following the hearing.

4

dismissed Smith-Goodman's complaint without prejudice for, inter alia, a lack of standing to bring claims on Z.K.M.'s behalf and failure to state a claim. On September 25, 2018, Smith-Goodman filed an Amended Complaint raising claims for violations of her constitutional rights pursuant to 42 U.S.C. § 1983 and various Pennsylvania statutes. Smith-Goodman further added English, Sullivan, and Judge Tereshko as parties to the action. On September 19, 2018, the Court sua sponte dismissed the Amended Complaint without prejudice as to the City Defendants and Turning Point Defendants for, inter alia, failure to state a claim. The Court dismissed the claims against Judge Tereshko with prejudice on the ground of judicial immunity.

On September 25, 2018, Smith-Goodman filed her Second Amended Complaint against the City Defendants and Turning Points Defendants alleging, pursuant to 42 U.S.C. § 1983, violations of her due process and equal protection rights under the Fourteenth Amendment, a conspiracy claim, and a Fourth Amendment child seizure claim. Smith-Goodman asks the Court to "order [Defendants] to discontinue violat[ing] [her constitutional due process rights" as well as award her "$100,000 in punitive damages." On November 20, 2018, and November 21, 2018, the Turning Points Defendants and City Defendants moved to dismiss for failure state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions are now ripe for disposition.

**DISCUSSION**

Smith-Goodman's Second Amended Complaint brings four main claims: (1) a Fourteenth Amendment substantive due process claim; (2) a Fourteenth Amendment procedural due process claim; (3) a Fourteenth Amendment equal protection claim; and (4) a Fourth Amendment child seizure claim. The Court will address each claim in turn.[6]

---

[6] Smith-Goodman also alleges a civil conspiracy claim pursuant to § 1983. This claim will be addressed along with Smith-Goodman's substantive due process claim.

5

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true," *id*. at 210-11, but need not accept "bald assertions" or "legal conclusions" made in plaintiff's papers, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted). The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). To satisfy this standard, the complaint must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. *Phillips v. Cty. of Allegheny*¸ 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Because Smith-Goodman proceeds pro se, the Court construes her pleadings liberally and "will apply the applicable law, irrespective of whether [he] has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

At the outset, the Court is precluded from enjoining Defendants "from violat[ing] [Smith-Goodman's] constitutional due process rights" by the *Rooker-Feldman* doctrine. "The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (citations omitted). For the

6

*Rooker-Feldman* doctrine to apply, "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

All four elements of the *Rooker-Feldman* doctrine are met insofar as Smith-Goodman asks the Court to enjoin Defendants from violating her constitutional due process rights. First, Smith-Goodman lost in state court as Z.K.M. was removed from her custody and reunited with her biological mother. Second, Judge Tereshko's decision removing Z.K.M. from her custody resulted in the injuries she complains of in the instant proceeding. Third, Judge Tereshko's ruling was rendered before the instant action as Judge Tereshko removed Z.K.M. from Smith-Goodman's custody on August 7, 2018, and Smith-Goodman did not file the instant action until August 28, 2018. Finally, Smith-Goodman is inviting the Court to review and overturn Judge Tereshko's decision because the only way for the Court to enjoin Defendants from violating her due process rights would require the Court to overturn Judge Tereshko's ruling and return custody to Smith-Goodman. The *Rooker-Feldman* doctrine prohibits such relief. *Johnson v. City of New York*, 347 F. App'x. 850 (3d Cir. 2009) (refusing to adjudicate claims seeking review of family court decisions regarding emergency removal of children from the home on the basis of *Rooker-Feldman*). Nevertheless, the Court may still address Smith-Goodman's claims challenging the City's policy relating to biological reunification and award damages for any violations to her constitutional rights. *See Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 947 (3d Cir. 2010) (finding "the *Rooker-Feldman* doctrine does not apply because [the plaintiff, in part,] sought damages . . . .").

To the extent her claims survive, the Second Amended Complaint fails to state claims upon which relief may be granted. First, Smith-Goodman cannot state a claim for violations of her Fourteenth Amendment due process rights pursuant to § 1983. Section 1983 creates a federal statutory mechanism for private individuals to vindicate violations of their constitutional rights by state actors.[7] *See Albright v. Oliver*, 510 U.S.C. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotations omitted)). To survive a motion to dismiss, Smith-Goodman must allege facts supporting an inference that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated." *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). The Court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all."[8] *Id.*

In this case, Smith-Goodman appears to bring a both substantive due process and procedural due process claim against the City Defendants and Turning Points Defendants. With regard to her substantive due process claim, Smith-Goodman fails to state a claim because she has

---

[7] For purposes of this Memorandum, the Court assumes the Turning Points Defendants are state actors.

[8] To the extent she seeks to hold the City liable pursuant to § 1983, Smith-Goodman must establish municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To establish *Monell* liability, a plaintiff must show she was deprived of rights, privileges, or immunities secured by the Constitution and laws of the United States, and the deprivation of those rights was the result of an official government policy or custom. *See id.*

Further, insofar as she brings claims against English in her official capacity, these claims are duplicative of claims against the City, and will not be further discussed. *See Tazioly v. City of Philadelphia*, No. 97-1219, 1998 WL 633747, at *13 n.9 (E.D. Pa. Sept. 10, 1998) (treating claims against DHS employees in their official capacity as duplicative of claims against the City).

not established her constitutional rights were violated. In this case, Smith-Goodman asserts she had a substantive due process right to the continuing care, custody, and control of Z.K.M. because she served as an in loco parentis guardian. However, Smith-Goodman provides no support for her position. Rather, she baldly asserts her "constitutional rights under [the Fourteenth Amendment] were established at the time of the dependency proceedings." Resp. in Opp'n to the Turning Points Defs.' Mot. to Dismiss 5.

On the contrary, Third Circuit authority suggests Smith-Goodman did not have a substantive due process right at the time of the dependency proceedings. The case of *Breakwell v. Allegheny Cty. Dep't of Human Servs.*, 406 F. App'x 593 (2010) is instructive. In *Breakwell*, paternal grandparents who stood in loco parentis to a minor child brought a § 1983 civil rights action against, inter alia, two caseworkers for the county's youth services office after dependency proceedings were initiated. *See id.* at 596. The grandparents alleged the caseworkers violated their fundamental liberty interest in the "care, custody, and control" of the minor child. *See id.* at 597. In finding that the caseworkers were protected by qualified immunity, the Third Circuit held that (1) it has "never held that those standing in loco parentis to a child have a constitutional right to the continued care and supervision of that child," and (2) Pennsylvania authority does not clearly define the contours of the constitutional rights afforded to persons serving in loco parentis. *See id.* at 598. Given the Third Circuit's guidance in *Breakwell* and Smith-Goodman's failure to submit any authority demonstrating her alleged constitutional right to the continued care, custody, and control of Z.K.M., Smith-Goodman fails to state a Fourteenth Amendment substantive due process claim under § 1983.[9]

---

[9] Because Smith-Goodman has failed to establish that a constitutional right was violated for her substantive due process claim, the Second Amended Complaint also fails to state a *Monell* claim against the City, *see Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1995) (finding a § 1983

Second, insofar as Smith-Goodman alleges a procedural due process violation, this claim similarly fails. Procedural due process rights are triggered by the deprivation of a legally cognizable liberty or property interest. *Pressley v. Blaine*, 352 F. App'x. 701, 705 (3d Cir. 2009). The procedural due process inquiry is bifurcated, requiring (A) a determination as to whether the "asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property," *Solomon v. Phila. Hous. Auth.*, 143 F. App'x. 447, 452 (3d Cir. 2005); and (B) if so, whether the procedures available provided the plaintiff with adequate due process," *see id.*

To determine what process is due, the Court must balance the (1) "the private interests affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" prior to the deprivation of a legally cognizable liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted).

Smith-Goodman argues she was denied procedural due process by being denied the opportunity to fully litigate her liberty interest in the continued care, custody, and control of Z.K.M. in the underlying dependency proceeding. Assuming for purposes of this memorandum that she had a protected liberty interest in the continued care, custody, and control of Z.K.M., Smith-Goodman's received adequate due process. The record of the underlying dependency

---

claim cannot stand if the underlying constitutional claim is invalid), as well as a § 1983 conspiracy claim against all Defendants, *see Williams v. Fedor*, 69 F. Supp. 2d 649, 666 (M.D. Pa. 1999) (finding a plaintiff must allege "an actual violation of a right protected under § 1983" to state a § 1983 conspiracy claim"), *aff'd*, 211 F.3d 1263 (3d Cir. 2000).

proceeding belies her claim to the contrary. As demonstrated by the transcripts and orders from the dependency proceeding, Smith-Goodman was "present at hearings with court-appointed counsel, Lisa Visco, Esq., in the dependency proceedings from January 23, 2018 through August 7, 2018." Letter to the Hon. Margaret Murphy 2, Feb. 22, 2019. The transcripts also demonstrate that Smith-Goodman had the ability to cross-examine English and Sullivan on their testimony. *See* Tr. 2, 21, Feb. 6, 2018 (noting Smith-Goodman and Attorney Visco's appearance, and Attorney Visco's cross-examination of English with regard to her findings of Z.K.M.'s truancy while in Smith-Goodman's care); Tr. 2, 12, 17-19, May 8, 2018 (noting Smith-Goodman and Attorney Visco's appearance, and Attorney Visco's cross-examination of Sullivan on her visit to Smith-Goodman's home). Despite her assertion that she was prevented from fully litigating Z.K.M.'s removal, the record of the underlying dependency proceeding shows Smith-Goodman had ample opportunity to litigate the issue in multiple pre-deprivation hearings.

As a result, even assuming she had an important protected liberty interest in the continued care, custody, and control of Z.K.M., in light of her ability to be present and represented by counsel at each pre-removal hearing, it is unclear what further process or procedural safeguards could have been afforded to Smith-Goodman that would have been of probative value. It appears to the Court the only process that would satisfy Smith-Goodman is one that would return Z.K.M. to her custody. Given these facts, Smith-Goodman was not denied "the opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews*, 424 U.S. at 333. Thus, Smith-Goodman fails to state a procedural due process claim against Defendants.[10]

---

[10] The Court notes that, in custody proceedings, in loco parentis guardians must be given "the opportunity to litigate fully the issue of whether that relationship should be maintained." *T.B. v. L.R.M.*, 786 A.2d 913, 917 (Pa. 2001). It is unclear from Third Circuit precedent or Pennsylvania authority to what extent this right extends to in loco parentis guardians during dependency proceedings. Nevertheless, assuming this right extends to dependency proceedings, for the reasons

11

Next, Smith-Goodman asserts a Fourteenth Amendment equal protection claim. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from denying equal protection of the law to any person. *See* U.S. Const. amend. XIV § 1. This Clause directs state actors to treat alike all persons similarly situated. *See Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Where, as here, the plaintiff seeks to establish a "class-of-one" equal protection claim, "a plaintiff must at a minimum allege that [s]he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

Smith-Goodman has failed to plead a class-of-one equal protection claim. Smith-Goodman's generally alleges "she was denied the right to . . . equal protection." Second Am. Compl. ¶ 7. This assertion wholly fails to state a class-of-one equal protection claim. *See Phillips*, 515 F.3d at 244-45 (finding plaintiff's "general accusations" that the defendants violated his equal protection rights was insufficient to establish to establish a class-of-one equal protection claim). In any event, there are no facts in the Second Amended Complaint demonstrating that Smith-Goodman was "intentionally treated differently from others similarly situated by" Defendants. *See generally* Second Am. Compl. Thus, Smith-Goodman's equal protection claim under the Fourteenth Amendment fails to state a claim.

Turning to her Fourth Amendment child seizure claim, Smith-Goodman asserts that visits to her home "initiated by English," Second Am. Compl. ¶ 8, and each subsequent visit by Sullivan, which "included mental health and substance abuse histories[,] were mandatory and not

---

state above, there is no credible assertion that Smith-Goodman was denied the opportunity to fully litigate the issue of whether her relationship with Z.K.M. should be maintained.

voluntary," *id.* As a result, Smith-Goodman argues she has "the right to pursue a Fourth Amendment . . . child seizure claim" on Z.K.M.'s behalf. *Id.* Smith-Goodman is mistaken.

As this Court noted when dismissing Smith-Goodman's Amended Complaint, "[a] Fourth Amendment child-seizure claim belongs only to the child, not to the parent, although a parent has standing to assert it on the child's behalf." *See Smith-Goodman v. Cty. of Phila. Dep't of Human Servs.*, No. 18-3675, 2018 WL 4494102, at *4 n.5 (E.D. Pa. Sept. 19, 2018) (citing *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2012)). However, a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself. *See Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) (finding a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). Thus, Smith-Goodman cannot raise a Fourth Amendment child seizure claim on Z.K.M.'s behalf. *See id.* at 877 ("[A] parent who is not an attorney must be represented by legal counsel in bringing an action on behalf of his or her minor children."). Therefore, Smith-Goodman fails to state a Fourth Amendment child seizure claim.

Finally, Smith-Goodman will not be granted leave to file a third amended complaint. A court must freely grant leave to amend, "unless such an amendment would be inequitable or futile" *See Phillips*, 515 F.3d at 245. In this case, having provided Smith-Goodman two prior occasions to amend her complaint and in light of the deficiencies outlined above, the Court finds that further amendment would be futile. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'" (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988))). Accordingly, Smith-Goodman's Second Amended Complaint will be dismissed with prejudice.

**CONCLUSION**

For the reasons set forth above, the City Defendants and the Turning Points Defendants' motions to dismiss will be granted and Smith-Goodman's Second-Amended Complaint will be dismissed with prejudice.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.